UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PAUL HO,** | Civ. No. 2:13-cv-6104-KM-MAH |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **GOLDMAN SACHS & CO. GROUP LONG TERM DISABILITY PLAN and PRUDENTIAL INSURANCE COMPANY OF AMERICA,** | |
| **Defendants.** | |

**MCNULTY, U.S.D.J.:**

Before the court are cross motions for summary judgment. (ECF Nos. 41,42.) The plaintiff, Paul Ho, seeks a ruling that defendant Prudential Insurance Company of America ("Prudential") wrongly determined that he is not eligible for benefits under a long term disability ("LTD") policy in which he was enrolled pursuant to his employment with Goldman Sachs & Co. ("Goldman").[1] Ho's complaint alleges, and Prudential does not dispute, that the LTD plan is an employee benefit welfare plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Compl. ¶ 6.)[2] Pursuant to ERISA's civil enforcement provisions, Ho asks that

---

[1]     Goldman is the Plan Sponsor and Plan Administrator of the Goldman Sachs & Co. Core Long Term Disability Program, which offers Goldman employees long term disability benefits. The Goldman, Sachs & Co. Group Long Term Disability Plan was a named defendant in this action until it was terminated as a defendant by stipulation dated January 10, 2014, in which Prudential agreed that it insures the long term disability benefits that Ho seeks and thus would be responsible for funding any benefits to which Ho is entitled under the LTD plan. (*See* ECF No. 18.)

[2]     For purposes of this opinion, citations to the record will be abbreviated as follows:

        Complaint (ECF No 1) = Compl.

the Court enter judgment, not remanding the matter to Prudential, but directly awarding him benefits under the LTD plan. Prudential seeks a ruling that it correctly determined that Ho does not qualify for benefits under the LTD plan, and entry of judgment in its favor. As the parties' cross-motions address the same issues, I discuss them together.

For the reasons discussed below, Prudential's motion for summary judgment is GRANTED as to Ho's second cause of action and DENIED as to his first cause of action. Ho's motion for summary judgment is DENIED. In short, this dispute between the parties presents genuine, material issues of fact that cannot be resolved either way on summary judgment.

---

Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment (ECF No. 41-15) = Pl. MOL

Declaration of Robert T. Szyba, Esq. [in Support of Defendant's Motion for Summary Judgment] (ECF No. 41-1) = Szyba Decl.

Defendant's Rule 56.1 Statement of Material Facts (ECF No. 41-14) = Def. SMF

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (ECF No. 46) = Pl. Opp.

Plaintiff's Response to Defendant's Rule 56.1 Statement of Material Facts (ECF No. 46-1) = Pl. Response

Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment (ECF No. 47) = Def. Reply

Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment (ECF No. 42-1) = Pl. MOL

Declaration of Jack T. Spinella in Support of [Plaintiff's] Motion for Summary Judgment (ECF No. 42-3) = Spinella Decl.

Plaintiff's Statement of Undisputed Facts in Support of His Motion for Summary Judgment (ECF No. 42-2) = Pl. SUF

Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 45) = Def. Opp.

Defendant's Response to Plaintiff's Statement of Undisputed Facts in Support of His Motion for Summary Judgment (ECF No. 45-1) = Def. Response

Plaintiff's Reply Memorandum of Law in Support of Its Motion for Summary Judgment (ECF No. 47) = Pl. Reply

I.    **FACTS**

The parties substantially agree on the following facts. Ho was employed as a Vice President in the Critical Infrastructure Engineering Group of Goldman's Information Technology Division. (Pl. MOL 2.) In this position, Ho was responsible for monitoring, trouble-shooting, programming, and overseeing performance of Goldman's computer infrastructure, as well as responding to computer security issues and conducting post-mortem reviews on internal operating systems and other software. (*Id.*)

As a Goldman employee, Ho participated in the LTD plan, pursuant to which Prudential issued and insured a group insurance policy offering eligible Goldman employees LTD benefits. Prudential serves as the claims administrator for the LTD plan and is also financially responsible for paying claims to its qualifying participants. (*See* Def. SMF & Pl. Response ¶¶ 1–4.)

Mr. Ho was injured in a car accident on December 29, 2011, and thereafter collected short-term disability benefits while he was out of work for six months. Toward the end of that six-month period, Ho submitted a claim for LTD benefits under the LTD plan. (*Id.* 4.) Ho claims he was forced to resign as a "disabled retiree" from Goldman just before the end of six months, on June 26, 2012; Prudential says that no evidence supports the contention that Ho's retirement was forced. (Pl. SUF & Def. Response ¶ 16.)

Also on June 26, 2012, Prudential sent Ho a letter informing him that his LTD benefits claim had been approved and that Prudential had determined that he was disabled from his regular occupation. (*Id.*; Pl. SUF & Def. Response ¶ 17.) Instead of commencing payment, however, Prudential told Ho a few days later that it required additional medical evidence to support his claimed disability. On July 23, 2012, Prudential asked Ho to submit to an examination by an independent clinical neuropsychologist, David Erlanger, Ph.D. (*Id.* ¶¶ 18–21.) Based on Dr. Erlanger's reports and its own review of Ho's record, Prudential denied Ho's claim on September 19, 2012, explaining in a letter that "there is no support for an impairment of a cognitive disorder that would prevent you from working, nor is there evidence of a psychiatric or

3

psychological disorder that could result in your reported symptoms." (*Id.*; Pl. MOL 5; Spinella Decl. Ex. A, p.2).

In support of Prudential's determination to deny benefits, the letter pointed to Ho's self-reported ability to conduct normal daily activities like showering, gardening, and listening to music; to the results of a battery of motivation and effort tests suggesting that Ho was exaggerating his symptoms, or "malingering"; and to the discrepancy between Ho's neuropsychiatric test results (suggesting severe impairment) and the extent of impairment typically resulting from a minor concussion (minor to none). (*See* Spinella Decl. Ex. A.)

Mr. Ho appealed the decision on April 1, 2012, submitting additional medical records of ongoing neurosurgical evaluation and cognitive and speech therapy, as well as a report on an examination conducted by his own hired neuropsychology expert, clinical psychologist George J. Carnevale, Ph.D. (*See* Pl. SUF ¶¶ 23–24; Spinella Decl. Exs. A–Z.) Dr. Carnevale reported that Ho "demonstrates impairments of attention concentration as well as severe deficits of short-term auditory/verbal memory and moderate deficits of visual memory," and also "slow visuomotor processing speed and impairment of complex visual processing and reasoning." (Szyba Decl. Ex. A, PRU -0242.) Dr. Carnevale concluded that Ho remains unable to perform the essential duties of his former job at Goldman. (*Id.* at PRU -0243; Pl. SUF ¶ 27.) Unpersuaded, Prudential reaffirmed its denial of benefits by letter dated August 15, 2013. (Pl. SUF ¶ 28; *see* Spinella Decl. Ex. GG.)

Mr. Ho does not deny that Prudential looked at all of the evidence he submitted. He claims, however, that Prudential failed to afford enough consideration to his self-reported and family-reported symptoms; to physician reports based on "subjective medical evidence"; and to diagnoses of his treating professionals, "who all found him to have symptoms linked to Post Concussive Syndrome and/or Posttraumatic Stress Disorder." (Pl. Reply 9). Ho also urges the court to find that a conflict of interest tainted Prudential's determination. Prudential is conflicted, he says, because it serves as both the claim administrator and the party obligated to pay claims. (*See id.* 8.)

Prudential does not dispute that Ho has been diagnosed with post-concussive syndrome or that he reports, *inter alia*, headaches, anxiety, concentration, memory, and sleeping symptoms. Nor does Prudential deny that Ho was referred to various forms of treatment, including speech and cognitive therapy. Prudential argues, however, that Ho's neurobehavioral symptoms are actually the product, not of post-concussive syndrome, but of malingering. In support of that conclusion, Prudential cites the evaluations of its own experts, Dr. Erlanger and another neuropsychology expert who reviewed Ho's files on appeal, Kimberly Alfano, PhD. (*See* Def. Response ¶¶ 5–11). Prudential does not believe that Ho "has experienced a loss in cognitive function and memory loss," or that he "continues to experience lasting effects from the accident, his concussion, and post-concussion syndrome." (*Id.* ¶ 11–12).

Mr. Ho denies Prudential's accusations of malingering. Dr. Carnevale attributed the test results suggesting malingering to the fact that Ho was tired and had a headache when he took the tests—a circumstance that Dr. Alfano and Dr. Erlanger allegedly failed to take into account. (Pl. Opp. 9–12.) Ho also cites Dr. Carnevale's opinion that Dr. Alfano's report improperly relied on studies focused on a different patient population, and that Dr. Alfano failed to explain why Dr. Erlanger's use of six validity tests to assess Ho's motivation and effort was necessarily superior to Dr. Carnevale's use of just two validity tests. (*Id.*)

Further, Ho points out that Prudential initially approved his qualification for LTD benefits—as evidenced by the June 26, 2012 letter—and thereafter reversed its decision based on a review by its own consulting physician. This about-face, he insists, indicates that the procedure was suspect. (Pl. MOL 13.) Prudential demurs, stating that this chain of events reflects nothing more than a careful analysis of Ho's claim. (Def. Opp. 21). Ho's initial medical records were inconsistent as to the extent of his brain injury, claims Prudential, so it decided to seek additional internal and independent medical opinions, from which it then concluded that benefits were not due. (*Id.*; Pl. SUF & Def. Response ¶¶ 17–21.)

5

The parties also disagree as to what documents are properly considered to constitute the LTD plan. Prudential alleges that the LTD plan encompasses four documents: (a) the group insurance contract between Prudential and Goldman (the "group insurance contract"); (b) the certificate of insurance issued by Prudential to Goldman in connection with the LTD plan, including a "booklet-certificate" (the "certificate of insurance");  (c) a document prepared by Goldman titled Core Long-Term Disability Program (the "employer plan document"); and (d) the Summary Plan Description (the "SPD"). (Def. SMF ¶ 5; Szyba Decl. Ex. A, PRU -0001-65, 1032-35.) Ho believes that the LTD plan comprises only (a) and (b), the group insurance contract and the certificate of insurance. (Pl. Response ¶ 5; Szyba Decl. Ex. A, PRU -0001-57). For reasons discussed below, this dispute is relevant to determining the degree to which this court must defer to the discretion of Prudential as claims administrator.

The parties do agree, however, that the LTD Plan defines disability as follows:

> You are disabled when Prudential determines that, due to your sickness or injury: you are unable to perform the material and substantial duties of your regular occupation, or you have a 20% or more loss in your monthly earnings; and you are under the regular care of a doctor.

(*See* Pl. MOL 5.) And they agree that Prudential defines "material and substantial duties" as duties that:

> Are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

(*Id.* 6.) Moreover, they agree that the LTD plan defines "regular occupation" as "the occupation you are routinely performing when your disability begins," and that the LTD plan instructs that "Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific Employer or at a specific location." (*Id.* 14.) These definitions appear in the

6

certificate of insurance. (*See* Spinella Decl. Ex. DD, p. 9; Szyba Decl. Ex. A, PRU-0034.)

Mr. Ho contends that his job at Goldman required high-level analytical and critical thinking. His neuropsychiatric test results, he says, denote significant impairment when evaluated in the context of such a demanding job. He contends that the benefits decision is flawed because Prudential never determined that he was able to return to his specific occupation, as opposed to just any work. (*See* Def. SMF & Pl Response ¶ 64.)

## II.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate where "there is no genuine issue of material fact to be resolved and the moving party is entitled to judgment as a matter of law."); *Alcoa, Inc. v. U.S.*, 509 F.3d 173, 175 (3d Cir. 2007). Summary judgment is desirable because it eliminates unfounded claims without resort to a costly and lengthy trial, *Celotex*, 477 U.S. at 327, but a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

"[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 247-48. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). That one of the cross-motions is denied, for example, does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

## III.   ANALYSIS

### A.   Preemption of State Trust Law Cause of Action

Initially, Prudential asks the court to grant summary judgment in its favor on Ho's second cause of action, which arises under state trust law. (*See* Compl. ¶¶ 90–103.) Such a state law claim, Prudential asserts, is preempted by ERISA. (*See* Def. MOL 1 n.1.) Ho does not respond to this argument, which is plainly correct.

The second cause of action is pleaded as a kind of alternative. It states that, if "the Court finds that this matter is governed by trust law, Plaintiff is entitled to relief based on Prudential's improper handling of his claim." (Compl. ¶ 91) That trust law Count is coextensive with the ERISA Count; it is founded on the allegation that "Prudential, as the claims administrator for the LTD Plan, is a fiduciary, as defined by ERISA, and owes a fiduciary duty to LTD Plan participants such as Plaintiff." (Compl. ¶ 97.) Like the first cause of action, the second seeks "Long-Term Disability benefits retroactive to and

8

including June 30, 2012, and continuing to the present under the LTD Plan." (*id.* ¶¶ 89, 103).

Thus the second, common law cause of action seeks "only to rectify a wrongful denial of benefits promised under [an] ERISA-regulated plan[], and do[es] not attempt to remedy any violation of a legal duty independent of ERISA." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214, 124 S. Ct. 2488, 2498 (2004). Therefore, it is completely preempted by the very broad express preemption provisions of ERISA §§ 502(a)(1)(B) and 514(a). *Id.*; *Merling v. Horizon Blue Cross Blue Shield of New Jersey*, No. CIV. 04-4026 (WHW), 2009 WL 2382319, at *10 (D.N.J. July 31, 2009) ("ERISA's preemptive scope is not limited to state laws specifically designed to affect employee benefit plans. It reaches any state law cause of action that duplicates, supplements, or supplant the ERISA civil enforcement remedy." (internal citations and quotation marks omitted)).

Prudential's motion for summary judgment is granted as to Ho's second cause of action. What remains is a pure ERISA case. I move on to the first cause of action, which arises under ERISA.

## B.    *De Novo* Standard of Review of Prudential's Benefits Denial

The threshold issue here is the applicable standard of review. Ho argues that this Court must reconsider Prudential's decision to deny benefits *de novo*. Prudential urges that I must review its decision under an abuse of discretion standard. I believe Ho has the better argument; the standard is *de novo*.

The U.S. Court of Appeals for the Third Circuit has helpfully set out the relevant analysis for determining this court's standard of review of Prudential's denial of benefits under an ERISA-governed LTD plan. Essentially, decisions are presumptively reviewed *de novo*. They will, however, be reviewed for abuse of discretion where the Plan has granted discretionary decision-making authority:

> The Supreme Court has held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

> determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion (or arbitrary and capricious) standard. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111, 128 S. Ct. 2343, 171 L.Ed.2d 299 (2008); *Doroshow v. Hartford Life & Accident Ins. Co.,* 574 F.3d 230, 233 (3d Cir. 2009). "Whether a plan administrator's exercise of power is mandatory or discretionary depends upon the terms of the plan." *Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1180 (3d Cir.1991). There are no "magic words" determining the scope of judicial review of decisions to deny benefits, and discretionary powers may be granted expressly or implicitly. *Id.* However, when a plan is ambiguous, it is construed in favor of the insured. *Heasley,* 2 F.3d at 1258. "The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies." *Kinstler v. First Reliance Std. Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir.1999).

*Viera v. Life Ins. Co. of N. Am.,* 642 F.3d 407, 414 (3d Cir. 2011) (footnote omitted).

My job at this stage is first, to determine which of the cited documents are properly considered part of the LTD plan and second, to determine whether the Plan language sufficiently grants discretion to Prudential as administrator. Should such discretion not be found, my review of Prudential's denial of benefits is *de novo.* Should such discretion be found, however, I review that decision only for abuse of discretion (or under an "arbitrary and capricious" standard).[3]

Prudential, arguing that the Plan confers discretion, points to the following excerpts, which I will refer to as passages (1), (2), (3) and (4):

1. The **group insurance contract** provides: "[i]f the provisions of the Group Contract do not conform to the requirements of any state or federal law or regulation that applies to the Group Contract, the Group Contract is

---

[3]      In the ERISA context, "abuse of discretion" is equivalent to an "arbitrary and capricious" standard of review. *Viera,* 642 F.3d at 413 n.4.

automatically changed to conform with Prudential's *reasonable interpretation* of the requirements of that law or regulation." (Def. MOL 6; Def. SMF ¶ 11.)

2. The **certificate of insurance** provides: (1) that a claimant is "disabled when *Prudential determines* that, due to your sickness or injury, you are unable to perform the material and substantial duties of your regular occupation, or you have a 20% or more loss in your monthly earnings; and you are under the regular care of a doctor." (Def. MOL 6; Def. SMF ¶ 12; Szyba Decl. Ex. A PRU-0034). It also states (2) that Prudential will stop sending payments to a claimant receiving them on the earliest of several events, including "[t]he date [the claimant] fail[s] to submit proof of continuing disability *satisfactory to Prudential.*" It further explains (3) that Prudential "may request that [a claimant] send proof of continuing disability, *satisfactory to Prudential*, indicating that you are under the regular care of a doctors." (Def. MOL 6; Def. SMF ¶¶ 12–13; Szyba Decl. Ex. A at PRU -0034, 0043, 0052 (emphases added)).

3. The **employer plan document** states: "[t]o be eligible for CORE LTD Program benefits, you must be 'disabled' *as determined by Prudential*," and "While you are disabled, Prudential will require periodic proof of your continuing disability and may require you to be examined by one of its health care providers." (Def. MOL 5; Def. SMF ¶¶ 6–7; Szyba Decl. Ex. A at PRU -1032–33.)

4. Finally, the **SPD**, which Prudential notes "is in the same booklet as the certificate of insurance," states:

> The Prudential Insurance Company of America as Claims Administrator *has the sole discretion* to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator *shall not be overturned unless arbitrary and capricious.*

(Def. MOL 6; Def. SMF ¶ 14–15; Szyba Decl. Ex. A at PRU -0060. *Italic emphasis added.*)

Because the parties agree that the group insurance contract and the certificate of insurance are part of the LTD plan, I will consider them first. *See* quoted passages (1) and (2), *supra.* Passages (1) and (2) speak in terms of Prudential's "reasonable interpretation" of legal requirements, or proofs of disability "satisfactory to Prudential."

In *Viera v. Life Insurance Co. of North America*, the Third Circuit Court of Appeals held that the words "proof of loss satisfactory to Us" did not confer sufficient discretion to insulate an administrator from *de novo* review. While cautioning that there are no mandatory "magic words," *Viera* suggested that the following language might do the trick: "Benefits under this plan will be paid only if the plan administrator decides in [its] discretion that the applicant is entitled to them." The underlying principle is that the plan language must "communicate the idea that the administrator not only has broad-ranging authority to assess compliance with pre-existing criteria, but also has the power to interpret the rules, to implement the rules, and even to change them entirely." 642 F.3d at 417 (quoting *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 639–40 (7th Cir. 2005)).

Passage (1), excerpted from the group insurance contract, does not satisfy the *Viera* standard. The group insurance contract governs the relationship between Prudential and Goldman; it does not specifically deal with the terms of coverage or administration of benefits. Moreover, the quoted language does not unambiguously communicate that Prudential has the power to interpret rules pertaining to benefit awards or denials. Rather, it grants Prudential discretion to conform the contract to laws or regulations where a discrepancy arises. At least one other court within the Third Circuit has held that this very language does not confer the necessary measure of discretion. *See Herbert v. Prudential Ins. Co. of Am.*, No. CIV.A. 14-2599, 2014 WL 4186553, at *2 (E.D. Pa. Aug. 22, 2014) (interpreting identical language in a group insurance contract for a Prudential LTD insurance plan).

Passage (2), from the certificate of insurance, gets closer, but still falls short. In *Diaz v. Prudential Insurance Co. of America*, 424 F.3d 635 (7th Cir. 2005), cited in *Viera*, the Court of Appeals addressed a Prudential LTD plan with language nearly identical to that in passage (2). That language, the Seventh Circuit held, did not confer the necessary discretion:

> Prudential's LTD Plan requires "proof of continuing disability, satisfactory to Prudential, indicating that [the claimant is] under the regular care of a doctor." This

12

> language does not alert the plan participant to the
> possibility that Prudential has the power to re-define
> the entire concept of disability, or regularity of
> physician care, on a case-by-case basis. Fairly read, it
> suggests only that the plan participant must submit
> reliable proof of two things: continuing disability and
> treatment by a doctor. In short, under Prudential's Plan,
> the only discretion reserved is the inevitable prerogative
> to determine what *forms* of proof must be submitted
> with a claim-something that an administrator in even
> the most tightly restricted plan would have to do.

*Id.* at 639.[4]

In *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 332 (7th Cir.
2000), also central to the court's decision in *Viera*, the Court of Appeals
likewise addressed language concerning an administrator's "determination" of
eligibility or entitlement and the requirement of "satisfactory proof":

> Obviously a plan will not-could not, consistent with its
> fiduciary obligation to the other participants-pay
> benefits without first making a determination that the
> applicant was entitled to them. The statement of this
> truism in the plan document implies nothing one way
> or the other about the scope of judicial review of his
> determination, any more than our statement that a
> district court "determined" this or that telegraphs the
> scope of our judicial review of that determination. That
> the plan administrator will not pay benefits until he
> receives satisfactory proof of entitlement likewise states
> the obvious, echoing standard language in insurance
> contracts not thought to confer any discretionary
> powers on the insurer.

*Id.* at 332. I agree with this conclusion. Particularly given *Viera*'s explicit
reliance on the reasoning in *Diaz* and *Herzberger*,[5] I predict that the U.S. Court
of Appeals for the Third Circuit would agree as well.

---

[4]    There is one identified passage in the certificate of insurance that was not
previously addressed by *Diaz*. That passage relates to "[t]he date [the claimant] fail[s]
to submit proof of continuing disability *satisfactory to Prudential*." This passage, too,
however, clearly falls under the same "form of proof" category as the statements that
*Diaz* found insufficient.

[5]    *See Viera*, 642 F.3d at 407 (relying on *Diaz* and *Herzberger*, and announcing it
"find[s] the reasoning of the Second, Seventh and Ninth Circuits persuasive"); *see also*

I move on to passage (3), from the employer plan document. Ho does not accept that this document is properly considered a constitutive document of the LTD Plan. That issue, however, is inconsequential. Like the language in the certificate of insurance, the language in the employer plan document does no more than repeat the "truism" that it is Prudential which will make disability determinations, and state that certain forms of proof must be submitted. *See Diaz*, 424 F.3d at 638–39; n.5, *supra*. Under the *Diaz* and *Viera* analysis, it does not confer the necessary discretion.

Finally, I consider passage (4), which is excerpted from the SPD. Ho again disputes that this document is properly considered part of the LTD Plan. That dispute is potentially consequential, because the SPD clearly states that Prudential as administrator has "sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." Indeed, it prescribes the standard of review, providing that Prudential's decisions should not be overturned unless they are arbitrary and capricious. (*See* SUF ¶ 14–15; Szyba Decl., Ex. A at PRU -060.)

Supreme Court precedent suggests that SPDs, all other things being equal, are *not* legally enforceable plan documents. (Pl. SUF ¶ 5; Pl. Opp. Br. 4.) In *CIGNA Corp. v. Amara*, the Supreme Court pronounced that "the summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)." 563 U.S. 421, 438, 131 S. Ct. 1866, 1878 (2011).[6] The *Amara* principle is not quite categorical. The *Amara*

---

*Herbert*, 2014 WL 4186553, at *2 ("The *Viera* court directly dealt with 'satisfactory to [plan administrator]' language and found that the term did not convey enough information to permit an insured to distinguish between plans that do and plans that do not confer discretion on the administrator. Accordingly, this term does not entitle Prudential to abuse of discretion review." (citation and internal quotation marks omitted)).

[6]  True, the Supreme Court has since treated language from the SPD as part of the plan where all parties to a case have agreed to do so. *See US Airways, Inc. v. McCutchen*, __U.S. __, 133 S. Ct. 1537, 1543 (2013). But where, as here, the effect of the SPD language is disputed, a more careful analysis under *Amara* is required.

Court made the above-quoted pronouncement in the context of rejecting the proposition that a SPD "*necessarily* may be enforced ... as the terms of the plan itself." *Id.* at 436, 131 S. Ct. at 1877. Thus, for example, courts have agreed that "*Amara* poses no automatic bar to a written instrument's express incorporation of terms contained in a summary plan description." *Tetreault v. Reliance Standard Life Ins. Co.,* 769 F.3d 49, 56 (1st Cir. 2014) (collecting cases). In short, a more case-specific analysis may be required.

As to the principles governing such an analysis, I look to the Tenth Circuit's influential interpretation of *Amara* in *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey,* 663 F.3d 1124, 1131 (10th Cir. 2011). In doing so, I follow the lead of other courts in this district, which have cited and followed *Eugene S.* on the issue of how language in a SPD should be evaluated.[7]

In *Eugene S.,* the Tenth Circuit cited *Amara* as standing for two propositions: "(1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents." 663 F.3d at 1131.[8] The *Eugene S.* court further explained that "an insurer is not entitled to deferential review merely because it claims the SPD is integrated into the Plan. Rather, the insurer must demonstrate that the SPD is part of the Plan, for

---

[7]     *See, e.g., Connecticut Gen. Life Ins. Co. v. Roseland Ambulatory Ctr. LLC*, No. 2:12-CV-05941 DMC, 2013 WL 5354216, at *2 (D.N.J. Sept. 24, 2013). In *Connecticut General*, the court cited *Eugene S.* and declined to dismiss the complaint under *Amara* because the plaintiff was alleging that the SPD was not inconsistent with the terms of the plan itself. 2013 WL 5354216, at *2 –3. *See also Mazzarino v. Prudential Ins. Co. of Am.*, No. CIV. 13-4702 KSH, 2015 WL 1399048, at *6 (D.N.J. Mar. 26, 2015), *appeal dismissed* (Dec. 1, 2015) (same). In *Mazzarino*, the plaintiff pointed to specific language suggesting that the SPD was not part of the plan documents. The court considered *Eugene S* in light of the lack of applicable Third Circuit precedent. It ultimately left the dispute unresolved, however, because it determined that Prudential's denial of coverage would be upheld under either standard of review. 2015 WL 1399048, at *5–7.

[8]     The court nevertheless declined to determine whether either proposition controlled in the specific case before it because it determined that the SPD at issue neither conflicted with nor presented terms unsupported by the plan. Rather, held the Tenth Circuit, the SPD under the peculiar circumstances of that case *was* the plan.

example, by the SPD clearly stating on its face that it is part of the Plan. A contrary decision would undermine *Amara*." *Id.* at 1131.

In this case, however, the Prudential SPD explicitly *disclaims* incorporation in the Plan. Although neither party directs my attention to it, it is hard to miss the following statement in the SPD: "**The Summary Plan Description is not part of the Group Insurance Certificate. It has been provided by your employer and included in your Booklet-Certificate upon the Employer's request.**" (Szyba Decl. Ex. A, PRU -0058). Since *Amara*, several courts have been confronted with substantially similar disclaimers in connection with claims against Prudential. They have uniformly held that Prudential could not rely on the SPD to establish that it possessed discretion, or to invoke the more forgiving abuse of discretion standard of review.[9] Indeed, even before *Amara*, a court in this district faced with identical SPD language determined that *de novo* review was appropriate because the SPD language conflicted with and was not expressly incorporated into the insurance contract

---

[9]    *See Gallo v. Prudential Ins. Co. of Am.*, No. 6:14-CV-556-ORL-37, 2015 WL 2106178, at *5 (M.D. Fla. Jan. 14, 2015) (finding, under the plain language of *Amara*, the terms of the SPD are not terms of the LTD plan and therefore it does not give Prudential's denial discretionary review); *Delaney v. Prudential Ins. Co. Of Am.*, 68 F. Supp. 3d 1214, at 1220–21 (D.Or. Dec.12, 2014) ("Here the SPD expressly states that it 'is not part of the Group Insurance Certificate,' and the list of documents comprising the Plan does not include the SPD. Thus, the language in the SPD to the effect that Prudential has 'sole discretion to interpret the terms of the Group Contract' provides no support for Prudential's argument that it has discretionary authority to interpret the Plan."); *Herbert v. Prudential Ins. Co. Of Am.*, Bo. 14–2599, 2014 WL 4186553, at *2 (E.D.Pa. Aug. 22, 2014) (same result); *Messer v. Prudential Ins. Co. of Am.*, 2013 WL 1319391, at *8 (W.D.N.C. 2013) (same result); *Shoop v. Life Ins. Co. of N. Am.*, 839 F.Supp.2d 830, 837 (E.D.Va. 2011) ("[E]ven though the SPD states that [the administrator] has sole discretion to interpret the terms of the Policy, the fact that this language is not included in the Policy itself, means [the administrator's] interpretation of the Policy terms is due no deference."); *see also Moran v. Life Ins. Co. of N. Am. Misericordia Univ.*, No. 3:CV-13-765, 2014 WL 4251604, at *8 (M.D. Pa. Aug. 27, 2014) (discretionary authority not given to administrator where SPD language did not constitute terms of the plan under *Amara*, and in fact contained express language to the contrary, and defendant otherwise failed to show that discretionary language was explicitly incorporated into the plan); *cf. Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 137 (5th Cir. 2016) (Where plan document expressly integrated the SPD in several places, the court could rely on a grant of discretionary authority in the SPD).

itself. *See Khan v. Prudential Ins. Co. of Am.*, No. CIV.A. 08-2292(SDW), 2010 WL 1286030, at *3–4 (D.N.J. Mar. 31, 2010).[10]

Prudential cites *Guthrie v. Prudential Insurance Co. of America* to suggest that the SPD may be considered together with the group contract and certificate of insurance to confer discretion on Prudential. No. CIV.A. 12-7358 JLL, 2014 WL 3339549, at *8 (D.N.J. July 8, 2014), *aff'd*, 625 F. App'x 158 (3d Cir. 2015). It is true that the *Guthrie* court acknowledged that the SPD was part of the operative insurance plan, but it apparently did so by agreement of the parties. *See id.* at *1 (on summary judgment, citing to Defendant's Local Rule 56.1 Statement and Plaintiff's Response that had the effect of admitting the contention). Under those circumstances, the court understandably did not expressly analyze the effect of each document; rather, it concluded in blanket fashion that "Defendant has demonstrated that it was granted discretionary authority under the terms of the relevant employee benefits plan." *Id.* at *8.

"As part of its burden to justify more deferential review, the insurer must show that the document containing a grant of discretion is incorporated into the broader plan." *Barbu v. Life Ins. Co. of N. Am.*, 987 F. Supp. 2d 281, 288 (E.D.N.Y. 2013).[11] Apart from the cases and documents already discussed

---

[10]    In *Khan*, the court pointed to a disclaimer in the SPD nearly identical to the one here. The court also noted that the group contract specified that "no change in the Group Contract is valid unless shown in: (1) an endorsement on it signed by an officer of Prudential; or (2) an amendment to it signed by the Contract Holder and by an officer of Prudential." And, it concluded there was no evidence that a Prudential officer had signed or endorsed the SPD. Likewise, this same language appears in the group contract here, (Szyba Decl. Ex. A, PRU -0008), and the SPD contains no evidence of signature or endorsement by a Prudential officer.

[11]    In *Barbu*, the court declined to apply an arbitrary and capricious standard where the only clear grant of discretion to the administrator appeared in a document not named in the insurance policy's integration clause. 987 F. Supp. 2d at 287–88; *accord Moran v. Life Ins. Co. of N. Am. Misericordia Univ.*, 2014 WL 4251604, at *8–10. In the instant action, neither party has directed my attention to an integration clause. But, upon review of the documents, it appears one exists. The group insurance contract states:

> The entire Group Contract consists of: (1) the Group Insurance Certificate(s) . . . (2) all modifications and endorsements to such Group Insurance Certificates which are attached to and made a part of the Group Contract by

17

above, Prudential cites nothing substantial in support of its contention that the SPD is part of the LTD plan. And Prudential does not even cite, much less distinguish, *Amara*. Prudential has not carried its burden to demonstrate that the Plan incorporates the SPD.

Nor has Prudential established that the SPD language is authorized by and consistent with, or at least does not contradict, language in the actual plan documents. *See Eugene S., supra.* Indeed, the SPD's grant of discretion, set alongside the Plan documents' failure to do so, sets up an irreconcilable conflict. Even under the Tenth Circuit's fairly liberal interpretation of *Amara* in *Eugene S.*, it is proper, where the actual LTD documents do not confer discretion, to set aside broad discretionary language that appears only in the SPD. *See, e.g., Wenger v. Prudential Ins. Co. of Am.*, No. 12 CIV. 1896 KBF, 2013 WL 5441760, at *9 (S.D.N.Y. Sept. 26, 2013)(where the language in the actual LTD plan documents did not grant discretion, the "[d]efendant's reliance on *Eugene S.* and its progeny is . . . misplaced because the Court finds that not only is the []SPD not part of the LTD Plan, but the []SPD and LTD Plan are in conflict."); *Durham v. Prudential Ins. Co. of Am.*, 2890 F. Supp. 2d 390, 395–96 (S.D.N.Y. 2012) ("because the Plan does not confer discretion on Prudential, the SPD conflicts with the [LTD] Plan, and its attempted grant of discretion is therefore ineffective"); *Hamill v. Prudential Ins. Co. of Am.*, No. 11 CV 1464 SLT, 2012 WL 6757211, at *9 (E.D.N.Y. Sept. 28, 2012), *report and recommendation adopted*, No. 11-CV-1464 SLT CLP, 2013 WL 27548 (E.D.N.Y. Jan. 2, 2013) (finding the same).

---

> amendment . . . (3) the forms shown in the Table of
> Contents as of the Contract Date; (4) the Contract Holder's
> application . . . (5) any endorsements or amendments to the
> Group Contract; and (6) the individual applications, if any,
> of the individuals insured.

(Szyba Decl. Ex. A, PRU -0008.) The SPD is conspicuously missing from this list, and the only table of contents appearing in the documents is one in the booklet-certificate, which does not refer to the SPD. (*Id.* at PRU -0028.) The SPD's absence from the clause further corroborates my conclusion that the discretionary language in the SPD does not defeat a *de novo* standard of review.

No document properly considered part of the LTD plan confers the necessary discretion upon Prudential. Accordingly, I find that there is no triable issue of fact as to whether Prudential's decision is a discretionary one, reviewable only for abuse of discretion. Prudential's denial of benefits to Ho must be considered *de novo.*

How would a *de novo* standard differ from an abuse of discretion standard in this situation? Again, the Third Circuit's *Viera* decision provides guidance:

> Under the abuse-of-discretion standard, we may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 845 (3d Cir. 2011) (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir. 1993)). In determining whether an administrator abused its discretion, we must consider any structural conflict of interest as one of several factors. *Estate of Schwing v. The Lilly Health Plan,* 562 F.3d 522, 526 (3d Cir. 2009).

> In contrast, if we exercise *de novo* review, the role of the court "is to determine whether the administrator ... made a correct decision." *Hoover v. Provident Life & Accident Ins. Co.,* 290 F.3d 801, 808–09 (6th Cir. 2002) (alteration in original) (quoting *Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir. 1990)). "The administrator's decision is accorded no deference or presumption of correctness." *Id.* at 809. The court must review the record and "determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Id.*

*Viera,* 642 F.3d at 414.

Even to call *de novo* consideration "review" is to misrepresent it to some extent. And both sides at times seem to argue within the framework of an arbitrary and capricious standard. It is true that courts in the Third Circuit, even when applying a *de novo* review standard, have considered an LTD plan administrator's procedural and fact-finding errors. *See, e.g., White v. Prudential Ins. Co. of America,* 908 F. Supp. 2d 618, 637–39 (E.D. Pa. 2012); *Moros v. Connecticut Gen. Life Ins. Co.,* No. CIV.A. 12-5468, 2014 WL 323249, at *10–18

19

(E.D. Pa. Jan. 29, 2014). But as Judge Easterbrook has explained, the Supreme Court's opinion in *Firestone Tire & Rubber Co. v. Bruch*[12] directs trial courts not to undertake a "review," but rather to issue an independent decision:

> [W]hat *Firestone* requires is not "review" of any kind; it is an independent decision rather than "review" that *Firestone* contemplates. The Court repeatedly wrote that litigation under ERISA by plan participants seeking benefits should be conducted just like contract litigation, for the plan and any insurance policy are contracts. 489 U.S. at 112–13, 109 S. Ct. 948. In a contract suit the judge does not "review" either party's decision. Instead the court takes evidence (if there is a dispute about a material fact) and makes an independent decision about how the language of the contract applies to those facts.

*Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009).

In exercising a *de novo* standard of review, then, I accord no deference or presumption of correctness to the administrator's findings. I "must review the record and determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." *Stepanski v. Sun Microsystems, Inc.*, No. CIV.A. 10-2700 PGS, 2011 WL 8990579, at *17 (D.N.J. Dec. 9, 2011), *report and recommendation adopted*, No. CIV.A. 10-2700 PGS, 2012 WL 3945911 (D.N.J. Sept. 10, 2012) (quoting *Viera*, 642 F.3d at 413–14). I may consider supplemental evidence that was not in the administrative record, but, at my discretion, I need not do so if I judge that the record was sufficiently developed. *Id.* "Thus, *de novo* review refers both to review of the decision below based only on the record below and to review based on the record below plus any additional evidence received by the reviewing court." *Id.* (citation and internal quotation marks omitted); *see also Khan*, 2010 WL 1286030, at *6 ("Here, because we are conducting a *de novo*

---

[12]     489 U.S. 101, 115, 109 S. Ct. 948 (1989).

review, we examined the evidence that was before Prudential as well as the evidence provided in support of the Motions for Summary Judgment.").[13]

In short, the *de novo* standard is transparent. What lies on the other side is equivalent to an ordinary motion for summary judgment—albeit one resting, in whole or in part, on a record compiled elsewhere. When making its independent decision, this Court as "the finder of fact must weigh *all* of the medical evidence. . . . If a paper record contains a material dispute, a trial is essential." *Krolnik*, 570 F.3d at 844.

## C.    Prudential's Denial of Benefits

The parties highlight three broad areas of contention: first, Ho's allegation that Prudential, as administrator and payor of benefits, labored under a conflict of interest; second, whether Prudential properly evaluated and weighed the evidence in the administrative record, including medical records, test results, and subjective testimony; and third, whether Prudential properly applied the LTD plan's definition of "disability"—especially the language requiring an inability to perform one's "regular occupation" as "normally" performed—to the evidence of record.

As to the first, conflict of interest issue, I need not rule, because I have concluded that a *de novo* standard of review applies. The Third Circuit made clear in *Viera* that an administrator's "conflict of interest in being both the payor and administrator of benefits . . . . is only pertinent to an abuse-of-discretion standard of review." 642 F.3d at 417–18.

With respect to the second and third issues, under the *de novo* standard the pertinent question before me is not whether Prudential's evaluation of the

---

[13]    Prudential asks the court to ignore evidence Ho submitted on this motion that does not appear in the administrative record—Dr. Carnevale's *curriculum vitae* and photographs of Ho's car accident. (*See* Pl. Opp. 12 n.4 & Pl. Response ¶ 1 (citing exhibits at ECF. No. 42-7, 42-39).) I am permitted to consider such supplemental evidence, however. For the same reason, I also reject Prudential's argument that Ho's current symptoms are irrelevant because they could not have gone into the administrator's determination, which was based on a claim file that closed in August 2013. (*See* Def. Response ¶ 13.) Current symptoms may or may not reflect on Ho's condition in the past, but they cannot be ruled out as irrelevant.

administrative record was flawed *per se*. Rather, it is whether, based on the summary judgment record, Ho is entitled to LTD benefits under the language of the LTD plan. If the record raises disputed issues of material fact, I must deny both parties' motions for summary judgment and permit the case to proceed to trial on those issues.

       1.   The LTD Plan's Definition of Disability

     A finding of disability depends, of course on the definition of a disability under the Plan. The LTD plan states that a claimant is disabled when, "due to [his] sickness or injury, [he is] unable to perform the material and substantial duties of [his] regular occupation, or [he has] a 20% or more loss in [his] monthly earnings; and . . . [is] under the regular care of a doctor." (*See, e.g.*, Szyba Decl. Ex. A, PRU -0034; Spinella Decl. Ex. GG, p. 2).

     The LTD plan defines "regular occupation" as "the occupation you are routinely performing when your disability begins." (*Id.*) The insurance certificate explains: "Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific Employer or at a specific location." (*Id.*; *see* Pl. MOL 14). The term "regular occupation" also appears in the definition of "material and substantial duties," which are defined as duties "normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified . . . ." (*Id.*) The plan also identifies certain relevant sources of information for determining ability to work:

> Prudential will assess your ability to work and the extent to which you are able to work by considering the facts and opinions from:
> - your doctors; and
> - doctors, other medical practitioners or vocational experts of our choice.

(Szyba Decl. Ex. A, PRU -0034 (certificate of insurance)).

     Mr. Ho argues that under the "regular occupation" and "normally performed" language, the demanding and highly technical nature of his job must be considered. Prudential, he claims, failed to consider whether Ho could

perform the duties of *his* job rather than just *any* job; instead, Prudential lent
undue significance to his ability to conduct household chores and other daily
living activities. (Pl. MOL 15.) As an example of the proper approach, he points
to an internal analysis that supported Prudential's initial approval of his claim
on June 26, 2012:  "If [Mr. Ho's] job is one which has a very high degree of
cognitive demand, it is likely that he would be limited even if the cognitive
impairment were mild." (*Id.* (citing Spinella Decl. Ex. U).)

Citing *Lane v. UNUM Life Insurance Co. of America*,[14] Prudential replies
that under the LTD plan language, it "was not required to consider [Mr. Ho's]
job as it was performed at Goldman." (Def. Opp. 22; *see also* Def. Reply 13.).
Prudential adds that, at any rate, it did consider Ho's specific job duties. (Def.
Opp. 22.)

In *Lane*, the court reviewed an administrator's denial of benefits under
an arbitrary and capricious standard and found "no evidence either in the
record or put forth by plaintiff that plaintiff's occupation as it is performed in
the national economy entails physically demanding tasks, long hours, and
stress." 2008 WL 724322 at *11. The court also noted "that plaintiff accepted
defendant's description of his duties both when appealing defendant's initial
denial, and for the purposes of plaintiff's motion for summary judgment." *Id.*

Mr. Ho points to no evidence, either in this Court or in the administrative
record, as to the particular characteristics of his job. Nor does he submit any
alternative evidence or description pertaining to his "occupation as it is
normally performed." An August 15, 2013 report by Prudential summarizing its
findings on appeal indicates that Prudential considered Ho's own description of
his duties. That report acknowledges, "[b]ased on the information reported by
Ho," that his job was stressful because of Goldman's high pressure trading
environment. The job also apparently involved troubleshooting and required
the use of technology. (*See* Szyba Decl. Ex. A, PRU -1025; *see also id.* at PRU -

---

[14]    No. CIV.A. 06-5819MLC, 2008 WL 724322, at *11 (D.N.J. Mar. 17, 2008)

0906, -0962–64.) Ho does not specifically argue that this description is insufficient.

Mr. Ho does, however, attack Prudential's analysis of the medical evidence and its related conclusion that he was able to perform those job duties. The August 15, 2013 report explains that "there remains insufficient clinical evidence of cognitive or emotional impairments which would lead to restrictions and/or limitations [including] . . . in Mr. Ho's ability to process information, communicate effectively with others, recall and retain information, and focus on verbal tasks." (Spinella Decl. Ex. GG, p. 13–14.)

If the standard here were abuse of discretion, I might find that Prudential's adoption of Ho's own description of his job and its analysis of his ability to perform it constituted a reasonable interpretation and application of the contract. *See Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 792 (3d Cir. 2010) ("An administrator's decision constitutes an abuse of discretion only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" (quoting *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993)).[15] Prudential, at a minimum, would seem to have satisfied the Third Circuit requirement "that any rational decision to terminate disability benefits under an own-occupation plan consider whether the claimant can actually perform the specific job requirements of a position." *Heim v. Life Ins. Co. of N. Am.*, No. CIV.A. 10-1567, 2012 WL 947137, at *11 (E.D. Pa. Mar. 21, 2012) (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 855 (3d Cir. 2011)).

But the standard is not abuse of discretion, and on *de novo* review, a minimum reasonableness in application of the contract does not suffice. The court must independently assess whether, in light of the medical evidence, Ho

---

[15]    *See also, e.g., Vaughan v. Vertex, Inc.*, No. CIV.A. 04-1742, 2004 WL 3019237, at *10 (E.D.Pa. Dec. 29, 2004) (explaining that "Prudential's definition of 'regular occupation' does not require it to consider the specifics of Plaintiff's position but only a general definition of the position," and finding that Prudential did not abuse its discretion where the Department of Labor's Dictionary of Occupational Titles' definition of claimant's job supported Prudential's reasoning).

could perform these duties.[16] Rather than "review" Prudential's decision as such, I must look directly at the record evidence and decide whether I *agree* with it.

2.   The Record Evidence and Prudential's Determination

It is clear that the record evidence raises several disputed issues of material fact as to Ho's symptoms and cognitive impairments, and thus his ability to perform his "regular occupation." Such two-sided issues bar entry of summary judgment for either party. *See, e.g., Sallavanti v. Unum Life Ins. Co., of America*, 980 F. Supp. 2d 664, 668–72 (M.D. Pa. 2013) (denying summary judgment on *de novo* review of denied LTD benefits where the probative value of physicians' reports, validity of claimant's subjective reports of pain and symptoms on which doctors' diagnoses were based, claimant's ability to perform the material duties of her occupation, and relevance of post-appeal evidence remained in dispute).

What follows is a non-exhaustive list of material issues as to which the evidence is in conflict:

### a) *The battle of the experts and other medical evidence*

Prudential afforded great weight to Dr. Erlanger's and Dr. Alfano's conclusions that, based on a panel of psychometric validity tests, Ho's symptoms and diagnoses are not the product of cognitive impairment, but of malingering. Ho acknowledges that Prudential was not legally obligated to privilege his treating physicians' or expert's opinions over those of its own medical consultants and experts. (Pl. Opp. 6.)[17] That, however, is not precisely the issue.

---

[16]   Prudential also argues that once it found that Ho had not presented proof of *any* cognitive impairments whatsoever, it was a foregone conclusion that he could perform his old job. (*See, e.g.*, Def. Reply 13–14; Def. Opp. 22.) This is a logical conclusion, but obviously one that depends on whether Prudential's determination that Ho suffers no impairments is correct.

[17]   *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834, 123 S. Ct. 1965, 1972 (2003) ("[W]e hold, courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor

Once again, if I were reviewing this aspect of Prudential's decision for abuse of discretion, I might uphold it. Other courts have done so in analogous circumstances. *See Williams v. Ford Motor Co.*, No. CIV.A.08-4830(JAG), 2010 WL 1186298, at *5–6 (D.N.J. Mar. 23, 2010); *Feigenbaum v. Merrill Lynch & Co. Basic Long Term Disability Plan*, No. 06-1075FSH, 2007 WL 2248096, at *5–6 (D.N.J. Aug. 2, 2007), *aff'd sub nom. Feigenbaum v. Merrill Lynch & Co.*, 308 F. App'x 585 (3d Cir. 2009); *Richardson v. Found. of Health*, No. 04-5599, 2006 U.S. Dist. LEXIS 61683, at *15 (AET) (D.N.J. Aug. 28, 2006); *Sarlo v. Broadspire Servs., Inc.*, 439 F. Supp. 2d 345, 360–61 (D.N.J. 2006). Here, however, *de novo* review applies; the court is placed in the position of deciding a motion for summary judgment. There is clearly enough conflicting medical evidence here to create an issue of fact. It is not this Court's role, on summary judgment, to declare a victor in the battle of the experts.

Mr. Ho points to medical evidence that his complaints are genuine. The record includes documentation from numerous physicians reporting on Ho's neurological symptoms, limitations, and diagnoses. (*See, e.g.*, Spinella Decl. Exs. I–S; Pl. SUF ¶¶ 7–8.)) Ho offers the opinion of his neuropsychology expert, Dr. Carnevale, that his impairments leave him unable to "perform the customary and essential duties of a critical infrastructure troubleshooter." (Spinella Decl. Ex. II, p.7; *see* Pl. Opp. 9–12.) Ho cites an early assessment by Prudential itself concluding that the evidence supports a finding of cognitive impairment and disability and determines that even mild cognitive impairment might limit his ability to perform his job if it requires a high degree of cognitive demand. (*See* Spinella Decl. Exs. T–U.) Prudential urges that certain physician reports submitted by Ho are vulnerable, for example on the basis that they too credulously rely on his self-reported symptoms. On summary judgment,

---

may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

however, I am not free to set them aside; such credibility determinations are for the fact finder.[18]

Prudential points to medical evidence suggesting that there is no serious cognitive impairment. And it points to direct evidence of malingering, particularly the report of Dr. Alfano. (*See* Def. SMF ¶¶ 76–91.) Putting the shoe on the other foot, Ho attacks the credibility of such evidence. He offers the opinion of Dr. Carnevale that evidence of malingering may have been the result of confusion, headaches, and mental fatigue. (Pl. Opp. 7–8, 10.) He accuses Dr. Alfano of pro-defense bias. (*Id.*) Here, too, I find that such issues are unsuitable for resolution on summary judgment.

At the heart of this case is a hotly contested conflict of expert opinions, requiring assessment of credibility and consideration of psychometric theory. On *de novo* review, the parties' disputes as to the credibility and/or probative value of the various medical opinions and records preclude summary judgment.[19]

---

[18]    *See, e.g., Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001) (district court erred in discounting complaints of pain as merely subjective on *de novo* review of ERISA benefits denial); *Heim v. Life Ins. Co. of N. Am.*, No. CIV.A. 10-1567, 2012 WL 947137, at *9 (E.D. Pa. Mar. 21, 2012) ("[a] plan administrator cannot refuse to consider subjective reports of pain"); *cf. Watts v. BellSouth Telecomms., Inc.*, 218 F. App'x 854, 856 (11th Cir. 2007) (finding that district court did not err in considering only objective evidence on *de novo* review to affirm denial of benefits, but noting that the plaintiff did not point to any subjective evidence in the record supporting that she was disabled).

[19]    *See, e.g., Sallivanti*, 980 F. Supp. 2d at 668 (finding that factual disputes preclude summary judgment, including "disputes as to the credibility of medical opinions contained in the record, which the Court is even less capable of resolving without the opportunity to hear the medical experts' testimony in open court, on both direct and cross examination; to ask questions of the medical experts, if necessary; and to observe their demeanor while testifying."); *Viera v. Life Ins. Co. of N. Am.*, 871 F. Supp. 2d 379, 388–89 (E.D. Pa. 2012) (where court reasoned that conflicting expert testimony would be highly relevant to the court's *de novo* determination, "it would appear that summary judgment serves no purpose other than additional litigation expense and delay," thus it was more appropriate for the case to proceed to trial); *see also Edwards Systems Tech. Inc. v. Digital Control Systems, Inc.*, 99 Fed. Appx. 911, 921 (Fed.Cir.2004) ("[A] classic 'battle of the experts' . . . renders summary judgment improper.").

### b) *Whether Mr. Ho can perform the material and substantial duties of his occupation*

The expert battle extends to the issue of whether Ho can perform the material and substantial duties of his regular occupation. Dr. Carnevale opined that Ho cannot, while Dr. Alfano concluded that Ho suffers from no legitimate cognitive impairments that would prevent him from performing his job at Goldman as he did before. A fact finder may determine which expert's opinion is more credible, or it might decide not to fully credit either one. Should it find some partial impairment, the fact finder will need to determine which of Ho's job functions are "material and substantial" and which can or cannot be "reasonably omitted or modified," per the LTD plan language, in order to determine whether Ho is disabled.

### c) *The probative value of Mr. Ho's retiree status and subjective self-reports*

Mr. Ho argues that Prudential improperly failed to consider Goldman's classification of Ho as a forced retiree. (Pl. MOL 15.) That classification, he argues, should have been considered as a factor supporting a conclusion that the effects of his accident were lasting and severe. (Pl. Reply 13.) Additionally, Ho claims Prudential failed to take into account self-reported symptoms, including headaches, anxiety, inability to focus, memory loss, confusion, neck pain, claustrophobia, and trouble sleeping, (Pl. Opp. 7), allegedly corroborated by (hearsay) statements of his wife. (*See* Pl. MOL 12–13; Pl. Opp. 12–13; Spinella Decl. Ex. F ("list of symptoms that my wife has observed about me, since the accident.")).

In rejoinder, Prudential argues Ho's forced retiree status is wholly irrelevant to a disability determination under the terms of the LTD plan. Ho, says Prudential, never produced any evidence of the reasons he was *forced* to resign. (Def. Response ¶ 16). At any rate, Goldman's determination of Ho's retirement status is independent of a determination of disability under the LTD Plan. (Def. Opp. 24.) Prudential adds that Ho's subjective symptoms are not supported by the neuropsychological test results. (Def. Reply 10 & n.5).

28

Once again, the factual issues are obvious. Summary judgment could not even be considered unless one party's evidence were excluded as a matter of law. But evidence beyond the administrative record may be considered on *de novo* review, and subjective evidence is properly considered. Thus the parties' disagreement as to the materiality and credibility of this evidence raises yet another genuine dispute requiring trial.

### d) *Whether Prudential engaged in bad faith*

Finally, Ho accuses Prudential of several procedural irregularities, including a suspect reversal of its initial approval of his claim. (*See, e.g.*, Pl. Reply 11–12.) Prudential insists that its reversal in position and ultimate decision alike were the product of thorough and careful analysis of the record evidence. (*See, e.g.*, Def. Opp. 10–25; Pl. SUF & Def. Response ¶¶ 17–21). Procedural irregularities pale in significance when, as here, the review is *de novo.* They may nevertheless be material to selection of the proper form of relief, or any entitlement to attorneys' fees, if Ho prevails.[20] Such considerations are premature.

---

[20]     ERISA's fee provision states: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

> In determining whether to award attorneys' fees, a District Court must consider several factors. The relevant factors include: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy the award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' position. [These] factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion."

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 239 (3d Cir. 2009) (citations and internal quotation marks omitted).

## IV.   CONCLUSION

For the aforementioned reasons, Prudential's motion for summary judgment is **GRANTED** as to Ho's second cause of action under state trust law and **DENIED** as to Ho's first cause of action under ERISA. Ho's motion for summary judgment is **DENIED**.

**KEVIN MCNULTY**
**United States District Judge**

DATED: October 28, 2016

30